## HESTER v. SANDERSON.

### No. 5355.

Court of Appeal of Louisiana. Second Circuit.

March 1, 1937.

Truett L. Scarborough, of Ruston, for appellant.

Elder & Elder, of Ruston, for appellee.

HAMITER, Judge.

The death of two cows which belonged to plaintiff is attributed to their eating hay alleged to have been negligently sprayed by defendant with a strong arsenic solution. Recovery of damages in the total sum of $107.50 is sought because of such loss.

In his answer, defendant admits the spraying of the hay with a weak arsenic solution, but denies that the cows died as a result of their eating the hay. He specifically averred that he was acting at the time in the capacity of Federal Tick Inspector under instructions of his superiors.

A trial of the merits was had and judgment was rendered in plaintiff's favor for $40. On rehearing, that judgment was recalled and vacated and plaintiff's demands were rejected. He prosecuted this appeal.

Plaintiff is the owner of a pasture located in Lincoln parish near the town of Choudrant. For a period of about two weeks during the month of October, 1934, the federal government, in furthering its emergency relief program, used the pasture for the herding of some 100 or 150 cattle. Hay from a quarantined tick infested area was brought into Lincoln parish and fed to the stock. Several days after the removal of the cattle from the pasture, defendant Sanderson, who was employed by the Bureau of Animal Industry of the United States Department of Agriculture, received written instructions from his superior, Dr. W. L. Davis, which read as follows:

> "Shreveport, Louisiana,
> "October 30, 1934.
> "Mr. J. T. Sanderson
> "Ruston, Louisiana
> "Dear Sir:
> "Cattle purchased during the drought relief program in Lincoln and Claiborne parishes were fed hay. Inquire as to origin of the hay fed the drought relief cattle in Lincoln and Claiborne parishes and if this hay was cut and shipped in from quarantine parishes see that remnants left at these holding pens and pastures where cattle were held are burnt as fast as feeding stops at these pens and pastures.
> "Hay from quarantine areas can not be moved to free area or to area where systematic tick eradication is in progress; any such movement is a violation of the Louisiana Live Stock Sanitary Board's ruling and is punishable by a fine.

."As there was hay shipped into some of the parishes where cattle were purchased during the Drought Relief program before any one was aware of it, we are taking the precaution to burn all remnants left where these cattle were fed as fast as the feeding at the different points terminates, so you see to this in Lincoln and Claiborne parishes, using your local men to help if you care to.

"Very truly yours,

"W. L. Davis."

Pursuant to this order, defendant, together with Mr. Bob Roach, who worked under orders of defendant Sanderson but was employed by the Louisiana Livestock Sanitary Board, went to the premises in question and proceeded to destroy the unconsumed hay by burning it. Some of it could not be burned because of its having been trampled into the ground. This was raked into a single pile, and was disinfected by them with an arsenic solution. On that same day, two of plaintiff's cows, which were in the pasture, appeared at this pile and succeeded in eating a small quantity of the sprayed hay remnants before they were driven away. Subsequently, they became sick and thereafter died.

 The evidence convinces us that defendant was negligent in assisting in and causing the spraying of the hay, and that the two cows in question came to their deaths because of having eaten it. The arsenic solution used was double strength. Defendant knew that arsenic was poisonous, and that if taken internally in large enough quantities by cattle it would kill them. He also was aware of the fact that the hay was located in the cow pasture which was the property of plaintiff. Defendant testified that he did not see any cows in the pasture on that day, but this furnishes no excuse. The proof is conclusive that plaintiff's cattle were there, and it was defendant's duty to ascertain this fact and to refrain from providing a poisonous food which they might eat.

Plaintiff offered the testimony of two experts who were of the opinion that the eating of the poisoned hay caused the deaths of the cows. One of them was a teacher of agriculture in the Choudrant school who had majored in animal industry at Louisiana State University and State College of Pennsylvania, while the other was a practicing veterinarian possessing 20 years of experience in his profession.

Both had observed, on numerous occasions, cows suffering from arsenical poison, and they testified that one of plaintiff's cows, which they examined, had the symptoms usually resulting from a poisoning of that kind. Defense counsel, through cross-examination, elicited testimony from these witnesses that the definite way of determining arsenical poisoning is by analyzing the contents of a cow's stomach; and two veterinarians, offered by defendant, also testified to that effect. However, no such analysis was made, although defendant viewed the remains of one of the cows and had the opportunity for obtaining the necessary contents for analyzing. The opinions of plaintiff's experts are positive and uncontradicted, and we must conclude that the cows died because of the aforementioned poisoning. Our conclusion on this question of fact is obviously in accord with that of the trial judge, who saw and heard the witnesses; for, as shown above, his original judgment was in plaintiff's favor. The setting aside of that judgment was, according to the briefs of counsel for both parties, because he was of the opinion that defendant was a public official, and, therefore, was not personally liable for his negligence.

 If it be conceded for the purpose of this discussion, and for that purpose only, that defendant was a public official and acted without malice in the spraying of the hay, we are of the opinion that his official status does not free him from liability for his negligent act. His own testimony discloses that he worked under and was subject to the orders of his superiors, Dr. Davis, Dr. McDonald, and Dr. Pilgreen. His efforts in destroying the hay in question resulted from the written order of Dr. Davis, above quoted; and that writting provided solely for the burning of the hay. The positive testimony of defendant is that, "They didn't order me to spray it; they ordered me to burn it." No discretion was vested in him with reference to the manner of effecting the hay's destruction. He was therefore acting in a ministerial capacity. A ministerial officer is one whose duty is to execute the mandates lawfully issued by his superiors. 46 Corpus Juris, verbo, "Officers," § 8. In some cases a public officer is held not liable for his negligent performance of an official duty which is judicial or discretionary in character. But, according to the general rule,

public officials are responsible to private persons for injuries resulting from the negligent performance of their ministerial duties. 22 R.C.L., § 162.

■ Defense counsel cites and relies on the cases of Lecourt v. Gaster, 50 La.Ann. 521, 23 So. 463 and Bright v. Murphy, 105 La. 795, 30 So. 145, 146. These cases, in our opinion, do not support his contention. To the contrary, they appear to favor, at least inferentially, plaintiff's position. In the Lecourt Case the court said: "The officer owes a responsibility to the public. He is presumed, in the discharge of his functions, to have acted in accordance with law, until the contrary is made evident. To sustain an action in damages against an officer, it must be shown that he grossly abused his authority." Viewing the facts of the case at bar in the light of that quotation, we find that defendant grossly abused his authority. He was authorized and directed to only burn the hay. There were no instructions from his superiors to spray it. His actions in employing the arsenical poisoning were prompted by his own ideas.

The Supreme Court, in the Bright Case, denied recovery to plaintiff because of lack of proof showing wrongdoing on defendant's part. The following is found in the court's opinion: "The defendant is sued, as a trespasser, for a personal and individual wrongdoing, and the proof fails to show that he did personally any act even tending to make him liable; and, in the absence of such proof, he cannot be held liable for an illegal act done under color of official authority derived from the board of control. State agents and boards have no right to exemption from liability for trespass, but the proof of some wrongful or illegal act should be made before liability can attach."

The trial judge, as shown by his original decree, was of the opinion that the damage sustained by plaintiff in the loss of his cows was the sum of $40. This amount appears to be correct under the evidence.

It is therefore ordered, adjudged, and decreed that the judgment of the district court be annulled and reversed, and there is now judgment in plaintiff's favor and against defendant for the sum of $40, together with 5 per cent. per annum interest from judicial demand. Defendant shall pay costs of both courts.