AYRES, Judge.
This suit and the suit of Poole v. Whitman, La.App., 107 So.2d 542, with which it was consolidated for trial in the district court, are predicated upon identical causes of action.
Plaintiff in each of these suits alleges that the defendants, over the protest and without the permission and consent of the plaintiff, Clyde Loe, entered upon his prem *538 ises, trespassed upon his property and took from his possession and out of his pasture and enclosure, and unlawfully appropriated and converted to their own use and possession, one mule, the property of plaintiff, Loe, allegedly valued at $150, and two mules, the property of Henry Tate Poole, Sr., allegedly valued at $275.
In these actions plaintiffs prayed for the issuance of a temporary restraining order prohibiting defendants from disposing of said property, for a rule nisi for a preliminary injunction, and, finally, for its perpetuation and for damages sustained on account of the aforesaid unwarranted and unlawful acts of the defendants. The temporary restraining order issued, as did, in due course, a preliminary injunction, and upon trial on the merits plaintiffs were each awarded damages in the sum of $100, together with $250 attorney’s fees, and the injunction was made permanent.
From the judgment thus rendered and signed defendants suspensively appealed to this court. Plaintiffs have answered the appeals and prayed that the award in favor of each be increased to $1,000, in addition to the attorney’s fees.
The defense is that “the actions of defendants were properly authorized acts of public officers in the discharge of their official duties.”
At the beginning of the trial defendants’ counsel, having disclosed his defense was predicated upon Act 12 of the Second Extra-Ordinary Session of the Legislature of the State of Louisiana for 1950 (LSA-R.S. 3:2851 et seq.), plaintiffs, by special pleas, asserted the unconstitutionality of the statute as being contrary to and violating Amendments IV, V and XIV of the United States Constitution in depriving them of their property without due process of law and in denying them the equal protection of the law.
Despite the seriousness and forcefulness of counsel’s argument and presentation of this plea and its obvious merit, we find it neither necessary nor proper that we entertain its consideration. This clearly appears, first, from the fact, as will be hereinafter shown, that the statute in question is wholly inapplicable to the situation presented here, and, secondly, from the fact the issue is not properly before us for determination, in that the issue was not determined in the trial court, nor has it been presented to this court for determination by an appeal by plaintiffs or in their answers to defendant’s appeal.
As to the second of these reasons, the jurisprudence is well settled. Code of Practice, Articles 572 and 888; Miller v. Murphy, 187 La. 230, 174 So. 272; Liquefied Petroleum Gas Commission v. E. R. Kiper Gas Corporation, 229 La. 640, 86 So. 2d 518.
Defendants’ contention, however, that the statute finds application in the instant matter is without merit. The reason is that the record does not establish that State Highway 12, upon which plaintiffs’ mules were said to have roamed, was ever designated as one of the highways upon which livestock would be prohibited. Nor does it appear that any publication of such designation, if made, appeared in either the State Journal or in any newspaper published in Bienville Parish, as required by the statute. The statute requires that the Director of Highways designate the highways upon which the running at large of livestock is dangerous and publish such designation in the state’s official journal once a week for three weeks, and likewise publish notice of such designation, or extracts therefrom, in a newspaper published in each parish wherein any part of any highway so designated is situated. The statute provided:
“When the designation and notices * * * are published as provided in this Section, the provisions of this part shall be given full force and effect.” LSA-R.S. 3:2859.
Without a designation having been made and notices thereof published as required *539 by the statute, the statute, by virtue of its own terms, had no force or effect. Therefore, it could only be concluded there is no statutory prohibition, at least under the statute relied upon, against livestock roaming at large on State Highway 12.
The defendants, however, insist that the burden was upon plaintiffs to establish the fact of the non-designation of State Highway 12 as one of those highways upon which the roaming of livestock would be prohibited, as well as the non-publication of notices thereof. We do not think so. The applicability of the statute was relied upon as a special defense to plaintiffs’ demands. Justification for their acts being predicated upon the aforesaid statute, the burden was upon defendants to show its applicability and as an essential ingredient of its special defense. The applicability of the statute was the foundation of this special defense and, without the designation of the highway, in accordance with the statute, and, without the giving or publication of notice thereof, its applicability could not be established. We think it was essential, therefore, for the defendants to prove not only the designation but also the publication of the designation of the highway involved as a part of their special defense. Having failed in that respect, their defense necessarily falls; Thigpen v. Stockman, La.App., 66 So.2d 364.
There is, therefore, no showing of any legal warrant or justification for the trespass committed by defendants and the taking and removal of plaintiffs’ livestock. Nor is there any proof that defendants were acting under any specific orders or instructions from officers of the State of Louisiana or their superiors with reference to plaintiffs’ livestock, or as to the roaming of livestock generally upon State Highway 12. It cannot, therefore, be said defendants were acting strictly pursuant to their public duties. In fact, they had no public duties in connection with the roaming of livestock on this particular highway, such being lawful. Nor can we conclude, for the reasons as will be hereinafter pointed out, that defendants acted in the utmost good faith, or were entirely free of animus.
These cases were before this court heretofore on a motion to dismiss the appeals (87 So.2d 217, 219 and 87 So.2d 219), where it was properly stated: -
“It must be recognized, of course, that there is no personal liability on the individual acting strictly pursuant to his public duties when that act is in good faith and without malice, for in such instances the action of the individual becomes merged in the official act. See: Monnier v. Godbold, 1906, 116 La. 165, 40 So. 604, 5 L.R.A., N.S., 463; Tucker v. Edwards, 1948, 214 La. 560, 38 So.2d 241. Strahan v. Fussell, 1951, 218 La. 682, 50 So.2d 805. On the other hand when the defendant acts outside of his strict authority he breaches the condition of his immunity and is liable to a civil action for damages to persons harmed by his improper conduct. Harper on Torts, sec. 298, p. 668; 2 Shearman and Redfield on Negligence (Rev’d. Ed.), sec. 323, p. 792 ; 2 Elliott on Roads and Streets (4th Ed.), sec. 858, p. 1120; see also David, The Tort Liability of Public Officers, 12 So.Cal.L.Rev. 127, 151; Thibodaux v. Town of Thibodaux, 46 La.Ann. 1528, 16 So. 450; Lecourt v. Gaster, 50 La.Ann. 521, 23 So. 463; Tucker v. Edwards, supra; Anders v. McConnell, La.App., 31 So. 2d 237; Strahan v. Fussell, 1951, supra.”
The record discloses the details of the occurrence leading to the issuance of warrants for plaintiffs’ arrest and the taking and removal of their property. During the morning of November 22, 1954, Henry Tate Poole, Jr., son of plaintiff Poole, was engaged in catching two animals out of a bunch of livestock in his father’s pasture, in the course of which the stock were permitted to get out of the pasture, whereupon they were pursued, the animals *540 sought finally caught and corralled, and the remainder driven from the highway, whereupon Poole discontinued his efforts for lunch. In the afternoon the animals were driven to the pasture of plaintiff, Loe, situated at his residence about a mile off of the blacktop highway. In the meantime, defendant, Whitman, had observed the livestock on the highway during the morning hours and in the afternoon, accompanied by the two other defendants, made a search for the animals, which they finally located in Loe’s pasture. Possession of the mules was sought to be gained from Loe, who refused! Whereupon, Whitman left Loe’s premises, went to Arcadia, conferred with the District Judge, made affidavits and secured warrants of arrest of plaintiffs for violating the provisions of the aforesaid statute in permitting the roaming at large of livestock upon the hard surfaced highways of Bienville Parish, and in resisting an officer by interfering with the officer in the arrest of persons violating said statute.
At this point it may be appropriate to state that in giving consideration to the language of the statute it does not appear therefrom to be a violation of law for a person to permit the running of his livestock at large on such highways, nor does the statute make it a criminal offense to interfere with an officer making an arrest under the statute.
Following the obtaining of these warrants, Whitman returned to Loe’s residence, informed Loe that he had obtained authority to enter his premises and take possession of his livestock, and, moreover, that he had obtained another paper which he would dislike to serve. Upon this showing of apparent authority and coercion, Loe consented, reluctantly, to the entry into his pasture. The defendants, however, were not successful in catching and taking possession of the livestock, even though they remained for a considerable time after dark. Thus being unsuccessful the night before, on the following morning they appeared, before daylight, at plaintiff’s residence with renewed strength and determination and with two recruits to their forces, whereupon they remained until daylight and, after much effort, succeeded in catching and loading the three mules, about 10:00 o’clock. The mules, over plaintiff’s protest were transported to Baton Rouge, where they were kept and confined until November 30, 1956, or for a period of approximately 18 months, notwithstanding they were farm animals. They were then voluntarily returned to the possession of their owners. Plaintiff, Poole, was also present on the evening and the morning of this episode, as were several others, because of the commotion created.
The record further establishes that on a previous occasion some difficulty had arisen between plaintiffs and, at least, one of defendants with reference to the corralling, possession and disposition of certain livestock, which had taken place, under similar circumstances, and disposed of in West Monroe.
Even though defendants are members of the State Police, it is settled law that when an officer acts beyond and outside of his strict authority, he breaches the condition of his immunity, and is liable in a civil action for damages to persons harmed by their improper conduct; Anders v. McConnell, La.App., 31 So.2d 237; Loe v. Whitman, supra. The situation is aggravated by the fact that plaintiffs had violated no law in either resisting arrest or in permitting their livestock to roam at large and on the highways, if, in fact, they did so permit such roaming. As to the position taken by the defendants that they are unlearned in the law, we are not impressed and the answer is that they were law enforcement officers. The public is not to be subjected to arrest and harrassment by enforcement officers for acts which are erroneously deemed by the officers to constitute offenses when, in reality, they are not, as would have been disclosed by a casual investigation. Ignorance of the law, as has often been stated, is no excuse. This should have *541 particular application to the officers charged with its enforcement. A thorough knowledge of their duties and of the laws they are charged with enforcing are indispensable. We think it would be going to unreasonable lengths to hold that a citizen cannot complain and cannot proceed for redress for actions of force and violence because he may have been considered by the officers to have violated the law, when, in fact, there was no law and no violation, which the officers could and would have ascertained on making the slightest investigation or familiarizing themselves with the provisions of the statute upon which they relied.
Lastly for consideration is the matter of the quantum of damages. The evidence discloses, as heretofore pointed out, considerable of the episode took place at plaintiff Loe’s residence and on his premises. Mrs. Loe was shown to have been in ill health and the aggravation and disturbance was not insubstantial. There was no showing of the monetary loss sustained by plaintiffs in the loss of the use of their farm animals for a year and a half. Consequently, no allowance could be made on that account. We think the damages that were sustained in the instant case are more than nominal due to the occurrence at plaintiff’s residence and the disturbance and annoyance on his premises, particularly in view of plaintiff’s wife’s physical condition. We think the award in this instance should be increased to $250, in addition to the allowance of attorney’s fees, which fees are properly allowable as an item of damages. Gunn v. Credit Service Corporation, La. App., 46 So.2d 628; Skelley v. Accounts Supervision Co., La.App., 53 So.2d 520, 522:
In the Skelley case it was stated:
“In the Gunn case, we recognized the lack of uniformity in the decisions of the Supreme Court regarding the right of a successful litigant to recover the fee of his counsel in a case where sale of property was arrested by injunction. Several decisions, emphasizing the question, were cited and from two did we quote, one on each side of the proposition, to wit: Fallin v. J. J. Stovall & Sons, 141 La. 220, 74 So. 911, and Marine Bank & Trust Company v. Shaffer, 166 La. 164, 116 So. 838. Inter alia, we said: We confess that we are unable to reconcile what appears to us to be diametrically opposed pronouncements on the part of our Supreme Court. It is therefore incumbent upon this court to choose to follow the holding which, in our opinion, best accords with the equitable consideration here presented.” (46 So.2d 630)
******
“The facts of the Gunn case are identical with those of the case at bar. Judge Hardy, organ of the Court, endeavored therein * * * to hold so there would be no room for misinterpretation, and we also believe he succeeded in the effort. This is unusually important in view of the fact that the Supreme Court was asked to review the case, but declined on the ground that the judgment is correct. From this action, we conclude that regardless of uncertainty and conflict in the jurisprudence prior to that time, the Gunn case embodies a correct pronouncement on the question as viewed by the Supreme Court.”
For the reasons assigned the judgment appealed is amended by increasing the award in favor of plaintiff, Clyde Loe, to $250, in addition to the allowance of attorney’s fees, and as thus amended, is affirmed at appellant’s cost.
Amended and affirmed.