Noel Bryant JAMES

v.

FEDERAL DEPOSIT INSURANCE COR-PORATION, John W. Dougherty and Farmerville Bank, Otis C. Fuller, Administrator for the Succession of Joe R. Fuller.

Civ. A. No. 9464.

United States District Court
W. D. Louisiana,
Monroe Division.
June 10, 1964.

John S. C. Massey, West Monroe, La., for plaintiff.

Edward L. Shaheen, U. S. Atty., E. V. Boagni, Asst. U. S. Atty., Shreveport, La., Hudson, Potts & Bernstein, Monroe, La., Armand Rabun, Farmerville, La., for defendants.

HUNTER, Judge.

Noel Bryant James, former President of the Farmerville Bank and the Sterlington Bank, seeks to recover damages from John W. Dougherty, Federal Deposit Insurance Corporation, Otis C. Fuller (Provisional Administrator of the Succession of Joe R. Fuller), and the Farmerville Bank, for damages allegedly sustained by James as a result of certain statements purported to be libelous and slanderous made by John W. Dougherty, a Bank Examiner, and Joe R. Fuller, President of the Farmerville Bank, in connection with the investigation and

trial of a criminal action against Noel Bryant James.

Instant action was initially filed in State Court and subsequently removed here. Joe R. Fuller departed this life, and by proper motion, Otis C. Fuller, Provisional Administrator of his Succession, has been substituted as a party defendant.

During the years 1943 through April 14, 1958, Noel Bryant James was President of the Farmerville Bank in Farmerville, Louisiana and was a member of its Board of Directors. Certain difficulties were encountered in connection with the collection of a loan made by that bank to W. A. and Shirley Bradley, and as a result of certain transactions connected with the operations and sale of a store owned and operated by the Bradleys, certain charges were made by Federal Deposit Insurance Corporation. Plaintiff was indicted and tried for the offense of embezzlement in the Federal District Court. He was promptly acquitted. Plaintiff now alleges that certain statements made by the Bank Examiner, Dougherty, and the President of the bank, Joe R. Fuller, were libelous and slanderous, and has brought this action for damages allegedly sustained as a result of those statements.

All defendants have filed motions to dismiss and/or motions for summary judgment. These motions are now before the Court.

## FEDERAL DEPOSIT INSURANCE CORPORATION

Plaintiff asserts that jurisdiction against F.D.I.C. exists by virtue of Title 12, U.S.C.A. § 1819, which provides the F.D.I.C. with authority to sue and be sued.

F.D.I.C. has filed a motion to dismiss, challenging jurisdiction, and insists that the passage of the Federal Tort Claims Act precludes an action in tort for money damages directly against a "sue and be sued" federally created corporation.

The position of F.D.I.C. is well taken. Freeling v. Federal Deposit Insurance Corporation, D.C., 221 F.Supp. 955 (1962), affirmed 326 F.2d 971, 10 C.A. 1963.

The motion to dismiss filed by Federal Deposit Insurance Corporation is sustained.

## JOHN W. DOUGHERTY

The record reveals conclusively that the statements made by Dougherty in his reports and in testifying were made by him in the discharge of his official duties as an employee of the Federal Deposit Insurance Corporation, and in relation to matters committed to him for determination.

These statements and utterances being absolutely privileged, no action for libel and slander can be made on account of such testimony or statements. Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L. Ed.2d 1434; Preble v. Johnson, 10 C.A. (1960), 275 F.2d 275; Sauber v. Gliedman, 7 C.A. (1960), 283 F.2d 941; Brownfield v. Landon, (1962), 113 U.S. App.D.C. 248, 307 F.2d 389; Poss v. Lieberman, 2 C.A. (1962), 299 F.2d 358. Whether or not the acts of federal employees, acting in the scope of their employment, are absolutely privileged is a matter which involves federal and not state law. Wozencraft v. Captiva, 5 Cir., 314 F.2d 288; Howard v. Lyons, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454. This being so, the privilege to Dougherty was absolute.

The motion for summary judgment filed by Dougherty must be granted. It is.

To paraphrase from Justice Learned Hand in the Biddle case, Gregoire v. Biddle, (2 Cir., 177 F.2d 579), we would add here that a public official guilty of using his powers to vent his spleen upon innocent people should not escape liability for any damage suffered by the innocent and if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The reason for doing so is that it is impossible to know whether the claim is well founded until the case has been

tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial would dampen the ardor of all but the most resolute, or the most irresponsible in the discharge of their duties. Here, James—a prominent and highly respected citizen—had been completely cleared of any wrongdoing, but still under the law he has no remedy against Dougherty.

## FULLER AND THE FARMERVILLE BANK

Here, plaintiff seeks damages against the Farmerville Bank and its President, Fuller, because of alleged slanderous statements made by the latter when duly subpoenaed to appear and testify before a legally impanelled grand jury or to a representative of a federal investigating agency charged with the responsibility of investigating banking matters, and while subpoenaed as a witness for the government in the trial of a criminal prosecution. The criminal action came about in disregard of the written request of the officials of the Farmerville Bank and its President, Joe R. Fuller. In connection with the liability sought to be imposed on the substituted defendant, Otis C. Fuller, and the Farmerville Bank, the complaint of the plaintiff alleges as follows:

"11."

"That JOE R. FULLER, individually and in his capacity as Chairman of the Board of Directors of FARMERVILLE BANK, did on or about April 19, 1962, state under oath that he had no knowledge of a bankruptcy proceedings instituted by Shirley H. Bradley; and further the said JOE R. FULLER did on or about June 20, 1958, state to JOSEPH J. ENGLEHART 'that he was not familiar with the details concerning the Bradley bankruptcy matter, but was of the opinion that petitioner should refund to the bank any monies that the bank is entitled to and that he, (the said JOE R. FULLER, individually and in his capacity as Chairman of the

Board of Directors) intended to see to it that your petitioner made restitution therefor'; and further that the said joe r. fuller did on or about February 3, 1959, state to JOSEPH G. ENGLEHART that the FARMERVILLE BANK lost FOURTEEN THOUSAND, TWO HUNDRED TEN AND NO/100 ($14,210.00) DOLLARS on the loan of W. A. and Shirley H. Bradley, which loss was attributable to your petitioner; and further the said JOE R. FULLER did state to the said JOSEPH G. ENGLEHART that the Board of Directors of the FARMERVILLE BANK expressed the opinion that your petitioner should return the FIVE THOUSAND AND NO/100 ($5,000.00) DOLLARS note to the FARMERVILLE BANK in recompense for part of the loss sustained by the bank on the above mentioned Bradley note; that the statements made by the said JOE R. FULLER were made in connection with the investigation of a criminal prosecution of petitioner on a charge of embezzlement of property involved in the W. A. Bradley bankruptcy and belonging to the FARMERVILLE BANK; and that the innuendo from the statement made by the said JOE R. FULLER inferred that petitioner had secretly converted property of the FARMERVILLE BANK to his own use and gain."

"14."

"Petitioner further shows that the Board of Directors of the FARMERVILLE BANK called a secret meeting of the Board of Directors and demanded the resignation of your petitioner from the Farmerville and Sterlington Banks; that JOHN W. DOUGHERTY and other examiners were present at said meeting and that further, petitioner did, pursuant to the request and demands of the said bank and bank examiners tender his resignation of his positions to his great damage on April 14, 1962."

**"15."**

"Petitioner further shows that the foregoing utterances by defendants herein are false, libelous and slanderous words and were intended by the defendants herein to deprive your petitioner of his good name, fame, reputation, credit and social standing within his community and with his employers and to bring him into scandal and disrepute among his neighbors."

"Petitioner itemizes his damages as follows:

**"19."**

| | |
|---|---|
| Loss of salary and bonus | $296,400.00 |
| Damage to petitioner's good name, fame, reputation and damage because of mortification, humiliation, inconvenience and other damages. | 330,000.00 |
| Legal expense in defense of criminal prosecution | 8,000.00 |
| | $634,400.00" |

 Plaintiff, to present a cause of action, must show that the statements were defamatory. If defamatory, the presumption of falsity and malice would attach and the burden of proving the truth of the defamatory statement would be upon defendant (Giordano v. Tullier, La.App. 4th Cir., 139 So.2d 15, 1962). The necessary premise that the statements are defamatory per se is missing here.

██ Even conceding the possibility of Fuller's statements being defamatory, we must consider the fact that these statements were made to either a duly and legally impanelled federal grand jury, or to a federal investigating officer whose authority extended to such investigative matters, or in open court in a judicial proceeding as a witness legally subpoenaed by the government to appear and testify in the trial of a criminal case. Therefore, all of such statements as alleged in the complaint as having been made by Fuller were privileged and cannot constitute a claim upon which relief can be granted. The Louisiana Supreme Court in the case of Oakes v. Walther, 179 La. 365, 154 So. 26 (1934), cited with approval the earlier cases of Terry v. Fellows, 21 La.Ann. 375, and Burke v. Ryan, 36 La.Ann. 951, and at page 28 quoted from the Terry case as follows:

"The administration of justice requires the testimony of witnesses to be unrestrained by liability to vexatious litigation. The words they utter are protected by the occasion, and cannot be the foundation of an action for slander."

The Court in this case recognized the rule of absolute privilege so long as the testimony given by the witness is pertinent to the issues in the cause. An examination of the testimony in the case at bar alleged to be slanderous shows, insofar as the testimony is concerned, that Fuller, as a witness, gave answers which were entirely responsive to the questions propounded to him and were material and pertinent to the issues involved in the criminal action.

Certainly, the statement made under oath by Fuller that he had "no knowledge of a bankruptcy proceedings instituted by Shirley H. Bradley" is not libelous per se, and having been made to a grand jury and to a petit jury after having been subpoenaed as a witness was privileged.

There remains the statements allegedly made by Fuller on June 20, 1958 and February 3, 1959. On June 20, 1958, Fuller allegedly told an F.B.I. agent "that he was not familiar with the details concerning the Bradley bankruptcy matter, but was of the opinion that petitioner should refund to the bank any monies that the bank is entitled to and that he (the said Joe R. Fuller, individually and in his capacity as Chairman of the Board of Directors) intended to see to it that your petitioner made restitution therefor." On February 3, 1959, Fuller allegedly stated to an FBI agent that the

"Farmerville Bank lost $14,210 on the loan of W. A. and Shirley Bradley, which loss was attributable to James, and that the Board of Directors of the Farmerville Bank had expressed the opinion that James should return the $5,000 note to the Farmerville Bank in recompense for part of the loss sustained by the bank on the Bradley note."

These statements made in 1958 and 1959 are not defamatory per se, but even if they were, any possible action that might have been brought for such has prescribed. The original complaint of the plaintiff was filed on April 2, 1963, and any cause of action based upon any of the statements and utterances made by Fuller prior to one year of the filing of this case has prescribed (LSA–Civil Code Articles 3536 and 3537). The language of these codal articles is rather inartistic (Kennard v. Yazoo & M. V. R. R., La.App., 190 So. 188), but it is clear that the intent of Article 3537 is that prescription under the circumstances here began to run when the statements were made to Englehart, the Government Agent (Bernstein v. Commercial National Bank, 161 La. 38, 108 So. 117, 1926). Accordingly, plaintiff's demand is prescribed unless prescription has been suspended. Nothing has happened to suspend prescription. There is no allegation that the plaintiff was unaware of these statements having been made, or that there was any fraud or deception being practiced on plaintiff to hide from him the fact that these statements had been made. The first indictment was filed on May 14, 1959, the second on February 19, 1960, and the last on April 21, 1960.

The statements by Fuller do not appear to be libelous or slanderous. The testimony Fuller gave before the grand jury and at the criminal trial was privileged. Any cause of action based upon the 1958–59 statements has clearly prescribed.

The motion for summary judgment by Fuller and the bank should be granted. It is.