529 So.2d 27 (1988)
Anthony AKINS, et al.
v.
PARISH OF JEFFERSON, et al.
No. 87-C-766.
Court of Appeal of Louisiana, Fifth Circuit.
June 7, 1988.
Joseph Tosh, Parish Atty., Louis G. Gruntz, Jr., Asst. Parish Atty., Gretna, Joseph E. LeBlanc, Jr., Milling, Benson, Woodward, Hillyer, Pierson & Miller, Charles Lanier, Sheila Walet, Phelps, Dunbar, *28 Marks, Claverie & Sims, Felicien P. Lozes, Lozes, Cooper & Cambre, Donald Hoffman, Lourdes Martinez, Carmouche, Gray & Hoffman, J. Keith Hardie, Bienvenu, Foster, Ryan & O'Bannon, New Orleans, James L. Donovan, Donovan & Lawler, Metairie, Sam LeBlanc, Leslie Lanusse, Adams & Reese, Gregory S. Abramson, Henri Wolbrette, Arthur H. Leith, McGlinchey, Stafford, Mintz, Cellini & Lang, Edward A. Rodrigue, Jr., Boggs, Loehn & Rodrigue, New Orleans, Cliff Enten, Stephen Pizzo, Blue, Williams & Buckley, Metairie, Rene A. Pastorek, Gretna, Daryl A. Higgins, Harvey, Aubrey B. Hirsch, Butler, Heebe & Hirsch, New Orleans, Larry C. Pieno, Marrero, for defendants-relators.
Ernest Jones, New Orleans, Joseph Naccari, Richard A. Deas, Metairie, William Quigley, Glen Cater, Jennifer Hillis, Sophia Pappas Barrett, New Orleans, for plaintiffs-respondents.
Before GAUDIN, GRISBAUM and DUFRESNE, JJ.
PER CURIAM.
The relators seek relief from the trial court's denial of their exceptions of no cause of action and prescription.
We are called upon to determine three questions:
(1) Whether the plaintiffs' petitions, alleging intentional and/or reckless actions on the part of the defendants, state a cause of action under the language of La.C.C. art. 2315 and La.R.S. 9:2798.1;
(2) Whether the plaintiffs' petitions state a cause of action against the defendants in their individual capacities; and
(3) Whether the trial court erred in denying the relators' peremptory exception of prescription.
FACTS AND PROCEDURAL HISTORY
On October 29, 1985, Hurricane Juan caused flooding in the Greater New Orleans area. More than 700 residents and homeowners of the Lincolnshire and Westminster Subdivisions in Marrero sued Jefferson Parish, the Jefferson Parish Council, the Jefferson Parish President and Councilmen in their official and individual capacities, the Board of Commissioners of the West Jefferson Levee District, the Commissioners of the West Jefferson Levee District in their official and individual capacities, the Executive Director of the West Jefferson Levee District in his official and individual capacity, the Director of the Jefferson Department of Public Utilities in his official and individual capacity, as well as various individuals, developers, contractors, corporations, and insurance companies. Colonial Lloyds Insurance Company also filed suit in subrogation to collect damages it paid to insureds under the comprehensive provisions of its automobile insurance policies. A total of five suits were filed; the suits were consolidated on October 2, 1987.
Defendants filed a peremptory exception of no cause of action, alleging that La.R.S. 9:2798.1 and the "Public Duty Doctrine" preclude the liability of a governing body and its officers and employees for discretionary acts. Defendants also filed a peremptory exception of prescription in the "Weatherspoon" and "Winesberry" cases. The "Weatherspoon" case was filed in Orleans Parish within the prescriptive period, which ended on October 29, 1986, but service of process was not effected until after that date. Defendants allege that since venue was incorrect in the "Weatherspoon" case as to political subdivisions under La.R. S. 13:5104(B) and since the aforementioned politicial subdivisions were not served within the prescriptive period, the claims had prescribed as to them, citing La.C.C. art. 3462.
Plaintiffs defended their claims by asserting that La.R.S. 9:2798.1 and the Public Duty Doctrine do not apply to causes of action arising out of alleged intentional and reckless acts. Plaintiffs also asserted that venue in Orleans Parish was proper as to some defendants who were solidarily liable with the aforementioned political subdivisions, and therefore when prescription was effectively interrupted as to the Orleans Parish defendants, it was interrupted as to all defendants bound in solido, including the political subdivisions, citing La.C.C. art. 3503.
*29 The trial court denied both exceptions, and defendants took writs to the Fifth Circuit Court of Appeal to challenge the trial court's denial of their exceptions.[1] After allowing plaintiffs to file written responses to defendants' writ application, this Court denied the writ application, stating, "On the presentation made and the record before us, we find no abuse of the trial court's discretion, nor any need for us to exercise our supervisory jurisdiction. Accordingly, the writ is denied." Defendants took writs to the Louisiana Supreme Court, 517 So.2d 806, which granted the writ application and transferred the case to this Court, ordering this Court to decide the case with an opinion after affording the parties an opportunity for oral and written argument. Briefs were filed, and oral arguments took place on March 9, 1988.
ANALYSIS
We first address whether the plaintiffs stated a cause of action against the political subdivisions and employees thereof, and against the individual public officials in their official capacity. Chapter 33 of the Jefferson Parish Code of Ordinances governs the Jefferson Parish Council's approval of subdivision applications. Additionally, Article 2, § 2.01(A)(9), and Article 6, § 6.01[2] of the Home Rule Charter permit the Parish Council to take responsibility for the Parish's drainage, and La.R.S. 38:1581 empowers the Jefferson Parish Council to establish drainage districts and drainage systems as may be required.
Our state statutory law limits the liability of public entities, their employees, or their officers, in the following manner:
§ 2798.1. Policy-making or discretionary acts or omissions of public entities or their officers or employees
A. As used in this Section, "public entity" means and includes the state and any of its branches, departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, employees, and political subdivisions and the departments, offices, agencies, boards, commissions, instrumentalities, officers, officials, and employees of such political subdivisions.
B. Liability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policy-making or discretionary acts when such acts are within the course and scope of their lawful powers and duties.
C. The provisions of Subsection B of this Section are not applicable:

*30 (1) To acts or omissions which are not reasonably related to the legitimate governmental objective for which the policy-making or discretionary power exists; or
(2) To acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct.
D. The legislature finds and states that the purpose of this Section is not to reestablish any immunity based on the status of sovereignty but rather to clarify the substantive content and parameters of application of such legislatively created codal articles and laws and also to assist in the implementation of Article II of the Constitution of Louisiana.
We see that, by its own terms, Louisiana's codification of the public duty doctrine states that this limitation of liability does not apply to "acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct." The plaintiffs' pleadings clearly state that the actions of the defendants were intentional and reckless acts.
We are further aided by our jurisprudence in McCloud v. Parish of Jefferson, 383 So.2d 477, 479 (La.App. 4th Cir.1980) (concurring opinion of Judge Lemmon), which states that
Providing drainage and protecting private property from flooding are proper functions of city and parish governments. Whether or not to provide a drainage system or to perform general improvements to an existing drainage system are decisions based on governmental judgment and discretion, tempered by such considerations as the availability of funds and the competing demands of other governmental functions in terms of priority. The failure to provide a general drainage system or to improve generally an existing inadequate system does not give rise to tort liability based on breach of duty.
Once a governmental body, however, undertakes to provide drainage or to make general improvements in an existing system, it has a duty to perform this function according to reasonable standards and in a manner which does not cause damage to particular citizens. This duty is based on C.C. art. 2315 and on traditional tort notions of fault, causation and damage to another. (emphasis added.)
See also Brown v. Red River Parish School Bd., 488 So.2d 1132 (La.App. 2d Cir.1986); Pennebaker v. Parish of Jefferson, 383 So.2d 484 (La.App. 4th Cir.1980); Eschete v. City of New Orleans, 258 La. 133, 245 So.2d 383 (1971); and Hamilton v. City of Shreveport, 180 So.2d 30 (La.App. 2d Cir.1965), writ denied, 248 La. 700, 181 So.2d 399 (1966). In their pleadings, plaintiffs clearly stated that the Parish of Jefferson undertook to provide drainage to the subdivisions in question and failed to correct a particular defect after notice.
Moreover, our jurisprudence is replete in stating that, in considering an exception of no cause of action, all well-pleaded facts in the petition and attached documents must be accepted as true, and any doubts must be resolved in favor of the sufficiency of the pleading to state a cause of action. Therefore, the exception must be overruled, unless the allegations affirmatively establish that under no facts admissible under the allegations of the petition does the plaintiff state a cause of action. Accordingly, after a careful review of the record, bearing in mind our statutory guidelines and our jurisprudential mandates, we conclude the trial court was eminently correct in its denial of the defendants' exception of no cause of action as to the above-cited defendants in their official capacities.
However, our reading of the judgments of the trial court dated October 2, 1987 concerning the exceptions reveals that the trial court denied the exception of no cause of action as to the Parish councilmen in their individual capacities, along with Parish President Joseph S. Yenni and Director of Jefferson Department of Public Utilities Peter Russo. La.R.S. 9:2798.1 limits the liability of public entities, their employees, or their officers for acts reasonably related to the legitimate governmental objective *31 for which the policy making or discretionary power exists. It does not address the individual liability of a public official or their officers or employees. We must turn to La.C.C. art. 2315 and to the jurisprudence for guidance concerning the personal liability of public officials for actions or inactions taken under the guise of public authority.
La.C.C. art. 2315, in pertinent part, states, "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." The personal liability of public officials hinges on whether the official is exercising a ministerial duty, or whether the duty is discretionary. "Ministerial" responsibilities are those responsibilities which must be performed as prescribed by the Constitution, statute, or order of a supervisor, and no discretion whatsoever is afforded the public official. Public officials who negligently perform ministerial duties are subject to personal liability. Malice or bad faith is not a prerequisite to such liability. See Lawyers Title Ins. Corp. v. Pitre, 245 F.2d 334, 336 (5th Cir.1957); Hester v. Sanderson, 172 So. 565, 566-67 (La.App. 2d Cir. 1937); and Tucker v. Edwards, 214 La. 560, 38 So.2d 241 (1948).
The language of La.R.S. 38:1581 suggests that the individual elected and/or appointed officials, as well as any Parish employees involved, were acting within the scope of their discretionary authority, as the statute states that the Parish Council "may establish ... a drainage system or systems" and "may" tax real property to finance such drainage systems. The jurisprudence interpreting La.C.C. art. 2315 indicates that public officers may be held personally liable for the performance or nonperformance of discretionary duties in two instances: (1) when the officer acts in bad faith or with malice, or (2) when the officer acts outside of his strict authority, thereby breaching the condition of his immunity. The theory supporting immunity in the case of good faith actions is that in such instances the action of the individual becomes merged in the official act. Godwin v. East Baton Rouge Parish School Bd., 372 So.2d 1060, 1062-63 (La.App. 1st Cir.1979), writ denied, 373 So.2d 527 (La.1979); Guilbeau v. Tate, 94 So.2d 896, 899 (La.App. 1st Cir.1957); and Loe v. Whitman, 87 So.2d 217, 219 (La.App. 2d Cir.1956), appeal after remand, 107 So.2d 536 (La.App. 2d Cir.1958), writ denied, 107 So. 2d 536 (La.1959).
This approach mirrors that originally taken by the federal courts. In Williams v. Treen, 671 F.2d 892, 896 (5th Cir.1982), cert. denied, 459 U.S. 1126, 103 S.Ct. 762, 74 L.Ed.2d 977 (1983), the court stated:
A qualified immunity can only be claimed by those officials whose positions require the exercise of official discretion. Jackson v. State of Mississippi, 644 F.2d 1142, 1145 (5th Cir.1981); Douthit v. Jones, 619 F.2d 527, 533 (5th Cir.1980); Cruz v. Beto, 603 F.2d 1178, 1184 (5th Cir.1979). To claim the immunity, an official must show that the allegedly wrongful actions "... were undertaken pursuant to the performance of his duties and within the scope of his discretionary authority." Barker v. Norman, 651 F.2d 1107, 1124-1125 (5th Cir.1981).
Once it has been established that a 1983 defendant was acting within the scope of his discretionary authority, Procunier v. Navarette, supra, sets forth a two prong standard to be used in determining whether the defendant is immune from liability. This dual test calls for both an objective and subjective evaluation of official conduct. Barker v. Norman, 651 F.2d 1107, 1125-1127 (5th Cir.1981); Clanton v. New Orleans Parish School Board, 649 F.2d 1084, 1100 (5th Cir.1981); Dilmore v. Stubbs, 636 F.2d 966, 968 (5th Cir.1981); Bryan v. Jones, 530 F.2d 1210, 1214 (5th Cir.1976) (en banc). Under the subjective portion of the Procunier test, an official forfeits his immunity when he acts "with the malicious intent to cause a deprivation of constitutional rights or other injury." Dilmore v. Stubbs, 636 F.2d 966, 968 (5th Cir.1981). Under the objective standard, "[an] official, even if he is acting in the sincere subjective belief that he is doing right, loses his cloak of qualified immunity if his actions contravene `settled indisputable' *32 law." Bogard v. Cook, 586 F.2d 399, 411 (5th Cir.1978).
....
In sum, a qualified immunity is only available to those officials who affirmatively assert the defense and prove that they were acting within the scope of their discretionary authority. Barker v. Norman, 651 F.2d 1107, 1120 (5th Cir. 1981). This affirmative defense is unavailable to those who either act with malice or who contravene clearly established law. Procunier v. Navarette, supra; Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).
The Supreme Court found it necessary to modify this approach in Harlow v. Fitzgerald, 457 U.S. 800, 815-18, 102 S.Ct. 2727, 2737-38, 73 L.Ed.2d 396, 409-410 (1982), wherein it found:
The subjective element of the good-faith defense frequently has proved incompatible with our admonition in Butz that insubstantial claims should not proceed to trial.
....
In the context of Butz' attempted balancing of competing values, it now is clear that substantial costs attend the litigation of the subjective good faith of government officials.
....
Consistently with the balance at which we aimed in Butz, we conclude today that bare allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery. We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. See Procunier v. Navarette, 434 U.S. 555, 565, 98 S.Ct. 855, 861, 55 L.Ed.2d 24 (1978); Wood v. Strickland, 420 U.S., at 322, 95 S.Ct., at 1001.30 (footnote omitted.)
An approach like that in Harlow was taken by a Louisiana federal court in James v. Fed. Deposit Ins. Corp., 231 F.Supp. 475 (W.D.La.1964). The court relied on the rationale of Chief Judge Learned Hand in Gregoire v. Biddle, 177 F.2d 579, 581 (2d Cir.1949), cert. denied, 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed.2d 1363 (1950), paraphrasing the language of Biddle as follows:
[A public]
official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties....
We adopt the approach of Harlow and James as the policy of this Circuit and find that since plaintiffs' petitions do not allege that defendants exceeded the scope of their authority or that defendants' actions violated clearly established statutory or constitutional rights of which a reasonable person would have known, plaintiffs failed to state a cause of action as to defendants in their individual capacities. Therefore, we reverse that part of the trial court's judgment which finds plaintiffs stated a cause of action as to the personal liability of Parish President Joseph S. Yenni, Director of Jefferson Department of Public Utilities Peter Russo, and Councilmen Robert B. Evans, Jr., Lloyd F. Giardina, Willie Hoff, T.J. Ward, James Lawson, Larry Hooper, and Robert L. DeViney.
In addressing the final issue of prescription, we note La.C.C. arts. 3492, 3462, 1799 and 3503 are pertinent. Additionally, La.C. C.P. arts. 42, 43, and 73 are also important.
*33 Finally, La.R.S. 13:5104[3] is relevant.
Louisiana jurisprudence requires courts to strictly construe the exceptions to the general rules of venue, noting that the party claiming the benefit of the exception must bring itself clearly within the exception. See Travis v. Waste Management of Ms., Inc., 509 So.2d 192, 193-94 (La.App. 1st Cir.1987); Belser v. St. Paul Fire & Marine Ins. Co., 509 So.2d 12 (La.App. 1st Cir.1987); and Hawthorne Oil & Gas Corp. v. Continental Oil Co., 377 So.2d 285, 286-87 (La.1979). Plaintiffs brought themselves within the exception provided in La.C.C.P. art. 73, the article governing suits filed against joint or solidary obligors, by stating that some of the defendants were domiciled in Orleans Parish, and by requesting a judgment against defendants in solido. Plaintiffs argue that, under La. C.C.P. art. 73 and La.C.C. arts. 1799, 3462, and 3503, prescription was interrupted as *34 to all defendants bound in solido with those defendants domiciled in Orleans Parish because prescription was interrupted as to the Orleans Parish defendants. See Brinkman v. Am. Motors Corp., 459 So.2d 671, 673 (La.App. 4th Cir.1984); Kern v. Travelers Ins. Co., 407 So.2d 2, 4 (La.App. 4th Cir.1981); and Hobbs v. Fireman's Fund Am. Ins. Companies, 339 So.2d 28, 38 (La. App. 3d Cir.1976), writ denied, 341 So.2d 896 (La.1977). Jefferson Parish obviously falls within the exception provided by La. R.S. 13:5104.
We also note the trial court, in its oral Reasons, states:
Okay. I'll overrule your motion of prescription and I'm overruling it on the grounds that thesome of the plaintiffs or some of the defendants were in Orleans Parish; that it was the proper venue since they would be jointly and severally liable and if they are jointly and severally liable, if they file it in the jurisdiction of any of the defendants, it would be a proper jurisdiction, and I'm taking into note your objection to the fact that a subdivision of the suit would not be sued has to be sued in the proper jurisdiction and served prior towell not necessarily served, but was certainly sued in the proper jurisdiction prior to prescription,..
We agree and find that under La.C. C.P. art. 43, both La.C.C.P. art. 73 and La.R.S. 13:5104 are exceptions to the general rules of venue provided in La.C.C.P. art. 42. Jefferson Parish urges this Court to rule that the exception provided by La.R. S. 13:5104, for suits against political subdivisions of the State, supersedes the exception provided by La.C.C.P. art. 73, for suits filed against joint or solidary obligors. Although filing suit in Jefferson Parish would have made venue correct as to all parties under both exceptions, and filing suit in Orleans Parish only makes venue correct as to one exception, we find that the argument asserted by relators must fall. The harsh result of that interpretation is neither fair nor necessary. Therefore, we find the trial court was again eminently correct in denying the relators' peremptory exception of prescription.
For the reasons assigned, that part of the trial court's judgments dated October 2, 1987, which granted causes of action against Parish President Joseph S. Yenni, Director of Jefferson Department of Public Utilities Peter Russo, and Councilmen Robert B. Evans, Jr., Lloyd F. Giardina, Willie Hoff, T.J. Ward, James Lawson, Larry Hooper, and Robert L. DeViney in their individual capacities is hereby reversed. In all other respects, the judgments are affirmed.
REVERSED IN PART AND AFFIRMED IN PART.
NOTES
[1] It should be noted that defendants only applied for writs as to the trial court's denial of the peremptory exception of prescription in the "Weatherspoon" case.
[2] Article 2, The Parish Council, § 2.01(A)(9), Powers and Duties, reads:

(A) The Parish Council shall be the legislative and policy making body of the parish and shall have authority, except as otherwise provided by this Charter, by the Constitution of this State, and specifically by Article XIV, Section 3(c) of the Constitution [of 1921]*, pertaining to the powers of the Sheriff, the Tax Assessor, the Clerk of the District Court, the School Board, and the incorporated municipalities of the parish, to exercise all powers of the parish, and to adopt such ordinances and resolutions as may be proper in the exercise thereof. Without limitation of the foregoing authority, the Council may:
....
(9) Perform any other acts, consistent with law, deemed to be for the best interest of the people of the parish.
State law referenceSee Const. of 1974, Art. 6, § 4.
Article 6, General Provisions, Section 6.01, Abolition of Certain Offices and Transfer of Functions, reads:
(A) At the time of taking of office of the first Parish Council under the provisions of this Charter the Police Jury shall be abolished and thereafter cease to exist; and the powers and functions of the Police Jury shall be assumed by this Parish Council and the Parish President as provided by this Charter.
(B) Within six months from the date on which the Parish Council shall take office, the powers and functions of the governing bodies of the special districts whose boundaries are wholly within the boundaries of the parish shall be assumed and retained by the Council and the Parish President, as elsewhere provided in this Charter; and the members of these governing bodies shall no longer hold office.
(C) Hereafter, as the term of each expires, the parish representatives on the governing bodies of special districts whose boundaries are partly within Jefferson Parish and partly within another parish shall be appointed by the Parish Council in accordance with law.
[3] La.C.C. arts. 3492, 3462, 1799, and 3503 respectively read:

Art. 3492. Delictual actions
Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained.
Art. 3462. Interruption by filing of suit or by service of process
Prescription is interrupted when the owner commences action against the possessor, or when the obligee commences action against the obligor, in a court of competent jurisdiction and venue. If action is commenced in an incompetent court, or in an improper venue, prescription is interrupted only as to a defendant served by process within the prescriptive period.
Art. 1799. Interruption of prescription
The interruption of prescription against one solidary obligor is effective against all solidary obligors and their heirs.
Art. 3503. Solidary obligors
When prescription is interrupted against a solidary obligor, the interruption is effective against all solidary obligors and their successors.
When prescription is interrupted against a successor of a solidary obligor, the interruption is effective against other successors if the obligation is indivisible. If the obligation is divisible, the interruption is effective against other successors only for the portions for which they are bound.
La.C.C.P. arts. 42, 43, and 73 respectively read:
Art. 42. General rules
The general rules of venue are that an action against:
(1) An individual who is domiciled in the state shall be brought in the parish of his domicile; or if he resides but is not domiciled in the state, in the parish of his residence;
(2) A domestic corporation, or a domestic insurer, shall be brought in the parish where its registered office is located;
(3) A domestic partnership, or a domestic unincorporated association, shall be brought in the parish where its principal business establishment is located;
(4) A foreign corporation licensed to do business in this state shall be brought in the parish where its principal business establishment in the state is located, as designated in its application to do business in the state;
(5) Except as otherwise provided by R.S. 13:3471(1), a foreign corporation not licensed to do business in the state, or a nonresident who has not appointed an agent for the service of process in the manner provided by law, other than a foreign or alien insurer, shall be brought in a parish where the process may be, and subsequently is, served on the defendant;
(6) A nonresident, other than a foreign corporation or a foreign or alien insurer, who has appointed an agent for the service of process in the manner provided by law, shall be brought in the parish of the designated post office address of an agent for the service of process; and
(7) A foreign or alien insurer shall be brought in the parish of East Baton Rouge.
Art. 43. Exceptions to general rules
The general rules of venue provided in Article 42 are subject to the exceptions provided in Articles 71 through 85 and otherwise provided by law.
Art. 73. Action against joint or solidary obligors
An action against joint or solidary obligors may be brought in any parish of proper venue, under Article 42, as to any obligor who is made a defendant.
If the action against this defendant is compromised prior to judgment, or dismissed after a trial on the merits, the venue shall remain proper as to the other defendants, unless the joinder was made for the sole purpose of establishing venue as to the other defendants.
La.R.S. 13:5104 reads:
§ 5104. Venue
A. All suits filed against the state of Louisiana or any state agency may be instituted before the district court of the judicial district in which the state capitol is located or in the district court having jurisdiction in the parish in which the cause of action arises.
B. All suits filed against a political subdivision of the state shall be instituted before the district court of the judicial district in which the political subdivision is located or in the district court having jurisdiction in the parish in which the cause arises.