82 So.2d 85 (1955)
Lorenza ST. JULIAN, Plaintiff-Appellant,
v.
STATE of Louisiana, Through Department of Institutions, Defendant-Appellee.
No. 4061.
Court of Appeal of Louisiana, First Circuit.
June 30, 1955.
Rehearing Denied September 15, 1955.
Writ of Certiorari Denied November 7, 1955.
*86 H. Alva Brumfield, Weber & Weber, Baton Rouge, for appellant.
Fred S. LeBlanc, W. C. Perrault, Baton Rouge, Adolph Menuet, Jr., Napoleonville, for appellee.
TATE, Judge.
Plaintiff filed suit, with legislative authorization, special Act 679 of 1954, against the State of Louisiana for damages arising from the alleged negligence of State employees at the Louisiana State Penitentiary. The District Court sustained an exception of no cause of action and dismissed petitioner's suit, from which judgment plaintiff appealed.
The District Court sustained the State's contention that Louisiana's constitutional provision, Art. 3, § 35, LSA-Constitution, permitting the State through the legislature to waive "immunity from suit" does not permit the State to waive its immunity from liability for negligent acts of its employees when engaged in governmental functions causing damage to others. As amended in 1946, Article 3, Section 35, LSA-Constitution, provides:
"Whenever the Legislature shall authorize suit to be filed against the State it shall provide the method for citing the State therein and shall designate the court or courts in which the suit or suits authorized may be instituted and may waive any prescription which may have accrued in favor of the State against the claim or claims on which suit is so authorized. The procedure in such suits, except as regards citation and original jurisdiction, shall be the same as in suits between private litigants, but no judgment for money rendered against the State shall be satisfied except out of monies appropriated by the Legislature for the purpose. For the purpose of such suits the State shall be considered as being domiciled in the Capitol. No such suit shall be instituted in any court other than a Court of Louisiana. Except as otherwise specially provided in this section, the effect of any authorization by the Legislature for a suit against the State shall be nothing more than a waiver of the State's immunity from suit insofar as the suit so authorized is concerned." (Italics ours.)
Before amended in 1946, this section provided as follows:
"Whenever the Legislature shall authorize suit to be filed against the State, it shall provide a method of procedure and the effect of the judgments which may be rendered therein."
It is of course fundamental that a State is immune from suit and liability for any tort unless it has expressly consented to such suit, as all cases below cited indicate. Before the 1946 amendment at least, the above constitutional provision was uniformly interpreted by our courts to mean that the Legislature could authorize suits stating a case of action based upon liability for the tortious acts of its officers and agents, Lewis v. State, 1945, 207 La. 194, 20 So.2d 917; Varnado v. State, 1 Cir., 18 La.App. 624, 136 So. 771.
The Lewis case concerned a suit for damages sustained through willful neglect and cruelty when the petitioner therein was an inmate in the Central Louisiana State Hospital. Reversing a judgment which had sustained an exception of no cause of action, our Supreme Court specifically disapproved of the contention advanced in this present case that "conduct which would be tortious in others is not a tort when committed by the State, or by its agents or employees"; it held that the State through its agents and employees "has the capacity to commit tortious acts" and can be "guilty of negligence", 20 So. 2d 917, 920. The constitutional provision then in force was interpreted as "an expression of public policy" permitting the Legislature to waive the State's immunity from liability for the tortious acts of its employees as well as its sovereign immunity from suit.
However, the State urges, such holdings should be disregarded by us because *87 the constitutional provision as then worded was held to permit the State to create by special statute a cause of action in claimants, see especially Crain v. State, La.App. 1 Cir., 23 So.2d 336, where it was held that the Legislature could by special statute create a right to sue in tort for a State employee injured during the course of his employment, despite the provisions of the Workmen's Compensation Act that compensation was the exclusive remedy for State employees so injured. It was largely due to the Crain decision and the penetrating dissent therefrom by our distinguished predecessor, Judge J. Hugo Dore, that the 1946 amendment, limiting Article 35 was adopted; see McKnight v. State, La.App. 1 Cir., 68 So.2d 652. "The present provisions permit the legislature in authorizing suit against the State only to waive (1) the State's immunity from suit; (2) any prescription accruing in favor of the State", Gilmore v. State, La.App. 1 Cir., 79 So.2d 192, at page 196.
The learned and able District Court upheld the contention of the State that "neither the State nor any agency thereof is liable for tort under a law or laws of the State" and that constitutional Article 3, Section 35, permitted the Legislature to waive merely the State's sovereign immunity from suit but not to waive any substantial defense such as immunity from liability while in the performance of governmental functions. The District Court cited McKnight v. State, 68 So.2d 652, where this court held that the State by special statute was not permitted to waive the State's right to file a plea of res adjudicata, as by waiving this defense the Legislature would create a cause of action where none existed before. Thus the District Court held that the constitutional provision merely authorized the Legislature to authorize suit as remedy for a pre-existing right; therefore the special legislative statute herein would be unconstitutional if it attempted to create a right to sue the State in tort, where no such right existed before.
We respectfully disagree with these conclusions. In our opinion, the constitutional provision would be meaningless if interpreted so as to permit waiver only of the State's immunity from the physical filing of the petition with the court, but not to permit waiver of the State's immunity for liability for the negligence of its employees. To so hold would require the courts merely to overrule exceptions to citation or ratione materiae but to dismiss the suit thereafter on the exception of no cause of action. In our opinion, the Legislature and the People of Louisiana did not in adopting the amended version of Art. 3, Section 35, in 1946 intend merely to permit authorization for claimants to physically file suits which immediately thereafter must be dismissed because of the State's immunity from liability; on the contrary, we feel that the plain intent was to permit waiver of the State's immunity from liability arising out of tort and otherwise. We are re-enforced in our feeling that this interpretation is correct by the history of this and similar constitutional provisions of the Louisiana Constitutions from 1898 on, as set forth particularly in the Lewis and McKnight cases cited above.
Our brethrens of the Second Circuit dismissed a somewhat similar contention that a special statute which authorized suit to be filed against the State waived only the State's immunity from suit in its own (or other) courts but did not waive its immunity from liability for the negligent acts of its employees performing governmental functions; stating that such a construction would render the enactment a nullity and meaningless in the face of the plain legislative intention "to waive the State's immunity against the suit in its entirety and to place its defense on the same plane as an ordinary defendant," Marler v. State, La.App., 78 So.2d 26, at page 30.
We do not feel persuasive cases called to our attention by the State holding charitable hospitals exempt from liability for the torts of their agents, such as Jurjevich v. Hotel Dieu, La.App., 11 So.2d 632; Messina v. Societe Francaise, etc., La.App., 170 So. 801, for reasons of public *88 policy similar to those by which States have in the past been accorded such immunity. (But see also Thomas v. Lobrano, La.App., 76 So.2d 599, 601, 615, where it is pointed out that immunity of a charitable institution for negligent acts of its employees is not available to its liability insurer to release the latter from liability for these same acts.) For we feel that since the Constitution of 1898, as expressed in the various pertinent constitutional provisions, the public policy of this State has permitted waiver of the State's immunity from liability for the negligent acts of its employees.
In its first alternative argument, the State urges that the special enactment authorizing this suit is unconstitutional on the ground that it merely specifies that citation shall be served upon the State through the Director, Department of Institutions, and through the Attorney General, and does not specify "what method shall be employed in preparing and serving the citation, what delays shall be granted the State." Article 3, Section 35, specifies that procedure shall be the same as in ordinary civil actions "except as regards citation". We do not feel that these italicized words require the special act to specify whether the citation be written by pen, pencil, or typewriter, by whom delivered, etc.; we feel that it merely intended that such special acts specify through what officers the State be cited, and mechanics thereof as well as delays to be governed by the procedural statutes applicable to all civil actions. Further, such special statutes, being remedial in nature, should be liberally construed to effect the legislative intention, Lewis v. State, 207 La. 194, 20 So.2d 917, at page 921.
The State's final alternative contention we also feel to be without merit. The suit is for wrongful death caused petitioner's son when he was an inmate at the penitentiary when allegedly the prison officials "having full knowledge" that another inmate "was a paranoic or mentally deranged person" did nevertheless place this dangerous inmate in the cell with decedent, and when allegedly said officials further had failed to maintain proper inspection control and safety measures to prevent the paranoic inmate from having a knife and from slashing petitioner's son to death. We feel the petition adequately states a cause of action based upon negligent acts or omissions of State employees. See Honeycutt v. Bass, La.App., 187 So. 848. Determination of whether the alleged acts or omissions constituted negligence which was a proximate cause of decedent's death must necessarily depend upon consideration of all the facts and circumstances as brought forth in the trial upon the merits.
For the above and foregoing reasons, the District Court judgment herein sustaining the defendant's exceptions of no right and cause of action is herewith annulled and reversed, and said exceptions are overruled; the case is remanded to the District Court for further proceedings according to law.
Reversed and remanded.