LOTTINGER, Judge.
This matter is before the Court of Appeal on appeal from a judgment sustaining an exception of No Cause of Action by the District Court.
On August 22nd, 1965, Cecile Marie Gremillion a patient of East Louisiana State Hospital at Jackson, Louisiana, died in New Orleans, Louisiana, while temporarily at the Charity Hospital there for diagnosis. On the 11th of July, 1966 suit was filed by the surviving husband and children of the decedent for wrongful death pursuant to authority granted by House Concurrent Resolution Number 96 of the 1966 Extra Session of the Legislature.
The pertinent provisions of that Resolution read as follows:
“BE IT RESOLVED .... That Louis Kermit Gremillion is hereby au *785 thorized to file suit individually and as father and natural tutor for and on behalf of the minor children, Michelle Rosary Gremillion and Jeanne Marie Grem-illion and Cecile Marie Gremillion, Theodore Louis Gremillion and Louis Salvant Gremillion, surviving major children, against the State of Louisiana, through the State Department of Hospitals and East Louisiana State Hospital upon their claims for damages for the wrongful death of their wife and mother, Cecile Marie Gremillion, on or about August 22nd, 1965, by reason of an accident which ocntrred at or near East Louisiana State Hospital, Jackson., Louisiana, and alleged to have been caused by the negligence of the officers, agents, and/or employees of the East Louisiana State Hospital . . .
The allegations in connection with the death and acts of negligence alleged to have been committed by the defendant are contained in Paragraphs 2 through 6 of plaintiffs’ petition which allegations read as follows:
“2.
“That on or about June 24, 1957, Cecile Marie Gremillion, hereinafter referred to as the deceased, was admitted as a patient to the East Louisiana State Hospital at Jackson, Louisiana, where she remained until the date of her death on August 22nd, 1965. Her condition was diagnosed by said hospital as chronic paranoid schizophrenic.
“3.
“At said times and places defendants, through their agents, servants and employees, entered upon and assumed the care and treatment for the patient and impliedly agreed to exercise and use reasonable care in the care and treatment of the patient.
“4.
“On August 22, 1965 the patient died of carcinoma of the cervix and endocervix with metastates to the brain, lung and adrenal.
“5.
“As a result of the carelessness and negligence of the defendants, through its agents, representatives and employees, the patient was caused to suffer death. The defendants were negligent and careless in the following particulars:
“1) That the defendants, well knowing their duties in regard to the care of their patients, did not perform or discharge the duties owed to the patient and did not make due examinations of her or any examinations whatever which would have determined the condition from which she died.
“2) In failing to diagnose her condition.
“3) In failing to furnish good medical treatment and care.
“4) In incorrectly diagnosing her condition.
“5) In failing to employ the proper laboratory tests which were reasonably available to the agents, employees and representatives of the defendants which could have determined and recognized the condition from which she died.
“6) In failing to employ the test and examinations reasonably available to them so as to he in a position to eliminate or attempt to eliminate the condition from which she died.
“7) That the defendants failed to employ a reasonable amount of attention, observation, and skill, in the care and treatment of the patient so as to note and determine her malady.
“8) In failing to make any pelvic examination whatsoever and completely failing to discover the malady from which she died.
*786 “9) Plaintiffs reserve their rights to more particularize the negligence of the defendants when the complete facts are made known to them.
“6.
“The negligent and unskilled acts and/or omissions set out above were done or omitted by the agents, servants and employees of the defendants who were acting within the scope of their employment as such agents, servants and employees and with the permission and the consent of said defendants. Their acts and omissions are imputable to the defendants.”
Defendants’ Exception of No Cause or Right of Action was based upon the fact that the Concurrent Resolution authorized suit against the State for the wrongful death of Cecile Marie Gremillion by reason of an accident which occurred at or near Jackson, Louisiana, and that clearly the allegations of the petition were directed against the defendants’ failure to properly treat and care for the decedent, rather than acts of negligence which resulted in an accident which caused her death.
The District Court maintained the Exception of No Cause of Action.
Plaintiffs argue that the resolution in question read in light of Louisiana Constitution of 1921, Article 3, Section 35, resulted in the necessary waiver of immunity. The pertinent language of Louisiana Constitution of 1921, Article 3, Section 35, follows :
“The Legislature is empowered to waive, by special or general laws or resolutions, the immunity from suit and from liability of the state, * * * ; and each authorization by the Legislature for suit against the State or other such public body, heretofore and hereafter enacted or granted, shall be construed to be and shall be effective and valid for all purposes, * * * as a waiver of the defendant’s immunity both from suit and from liability.”
Plaintiffs argue that the above language means that any resolution which waives the state’s immunity as to the particular plaintiffs in question is sufficient for any type of suit they bring. This interpretation is from the language that the waiver, “shall be construed to be and shall be effective and valid for all purposes
Defendant ably points out the genesis of Article 3, Section 35. In Duree v. Maryland Casualty Company, 238 La. 166, 114 So.2d 594 (1959) and in the case of Stephens v. Natchitoches Parish School Board, 238 La. 388, 115 So.2d 793 (1959), the Supreme Court decided that a waiver of immunity from suit did not waive immunity from liability.
These two cases were severely criticized in the 1959-1960 issue of the Louisiana Law Review in an extremely interesting and well written article by the late Henry George McMahon in collaboration with Mr. Ben R. Miller, Jr. of the Baton Rouge Bar (The Crain Myth, 20 La.Law Rev. 449.)
A very strong argument was made therein that a waiver of immunity from suit of necessity carried with it a waiver of immunity from liability.
As a result the Louisiana Law Institute proposed an amendment to Article 3, Section 35 which cured the defect and provides specifically for waivers of immunity from liability as well as from suit. The Legislature ultimately adopted a proposed constitutional amendment which was ultimately approved by the people and is now Article 3, Section 35, and was effective at the time House Concurrent Resolution Number 96 of 1966 was adopted.
A reading of that section reveals certain important changes. Thus it states the intent clearly indicating that a waiver of immunity from suit carries with it a waiver of immunity from liability and is valid and effective for such purposes.
*787 It follows then that the language contained in Article 3, Section 35 relied upon by plaintiffs to bring their factual situation within the authorization of House Concurrent Resolution Number 96, i. e. that it shall be valid for all purposes can be considered only as a constitutional overruling of the Duree and Stephens cases supra relative to failure to waive immunity from liability.
The Legislature may grant a general waiver of immunity. It did not in this case. Since it was specific, then the authorization must be interpreted in light of its own language.
We do not feel that the House Concurrent Resolution in question was a waiver for any type of suit plaintiffs wished to bring. A reading of the resolution in question by legal scholar or layman would lead either to believe that the alleged damages were the result of active negligence such as an automobile accident rather than passive negligence such as malpractice. At the very least, the State should have notice as to the type of suit for which it is waiving its immunity.
Furthermore, plaintiffs would have the Court interpret the word accident to include passive negligence. In so urging, plaintiffs rely on several cases involving insurance contracts which define accident as an event which under the circumstances is unusual and unexpected by the person to whom it happens. It seems that this interpretation in insurance contracts arose due to the rule that the language in insurance policies should be construed most favorably to the insured and against the insurer which prepared the contract, and this interpretation should not be controlling here.
In conclusion it is submitted that, unfortunate though the results may be, House Concurrent Resolution Number 96 of 1966 does not authorize plaintiffs to bring the action brought.
The correction thereof is a Legislative prerogative, however, and beyond the province of the Court.
For the reasons hereinabove assigned, the judgment of the Lower Court is affirmed at appellants’ costs.
Judgment affirmed.