281 So.2d 881 (1973)
Cecil PETTIS, Plaintiff-Appellant,
v.
STATE DEPARTMENT OF HOSPITALS et al., Defendants-Appellees.
No. 4228.
Court of Appeal of Louisiana, Third Circuit.
August 20, 1973.
Concurring Opinion August 21, 1973.
Rehearing Denied September 14, 1973.
*882 John A. Jeansonne, Jr., Lafayette, and Wm. Henry Sanders, Jena, for plaintiff-appellant.
Walter J. Horrell, Baton Rouge, Adams & Reese by Henry B. Alsobrook, Jr., New Orleans, for defendants-appellees.
Gold, Hall, Hammill & Little by Jimmy M. Stoker, Alexandria, for exceptor-appellee.
Provosty & Sadler by LeDoux R. Provosty, Jr., Alexandria, for defendants-appellees.
Before SAVOY, HOOD and CULPEPPER, JJ.
HOOD, Judge.
Plaintiff, Cecil Pettis, instituted this suit for damages for personal injuries allegedly sustained by him while he was being treated in the Central Louisiana State Hospital, at Pineville. The defendants are: (1) State of Louisiana, through the Department of Institutions; (2) State of Louisiana, through the State Department of Hospitals, and Central Louisiana State Hospital; (3) Central Louisiana State Hospital; (4) Dr. Arthur L. Seale; (5) Dr. Harvey B. Henry; (6) Dr. Earl H. Kent; and (7) Dr. William L. Kirkpatrick.
On Motion of State of Louisiana, through the State Department of Hospitals, and after a hearing, a summary judgment was rendered by the trial court dismissing *883 the suit as to that defendant. Another judgment was rendered by the trial judge shortly thereafter sustaining exceptions of no cause of action filed by defendants Seale, Kent, and Kirkpatrick, and dismissing the suit as to those defendants. Plaintiff has appealed from both of those judgments.
Several issues are presented. The one to which we address ourselves first is whether the claimed immunity of the State of Louisiana, through the State Department of Hospitals, has been waived by the adoption of House Concurrent Resolution No. 230 at the 1972 Regular Session of the Louisiana Legislature. This issue was raised by plaintiff as an alternative argument.
This suit was instituted on April 21, 1972. The pertinent allegations in plaintiff's petition read as follows:
"3.
On or about May 28, 1971 while petitioner was in the control of the above mentioned defendants and employee or employees of the hospital whose name or names are unknown to petitioner, but well-known to said hospital, and because of the negligent rendering of services, petitioner sustained injuries to his hips, pelvis, shoulders, knee-cap, legs, arms and bones of his body, together with injuries to ligaments, muscles, nerves and roots thereof.
"4.
Petitioner shows that he would not have sustained his injuries except for the negligence of the Central Louisiana State Hospital, its employees, and the defendants above named; and by the above named physicians and by employees acting in the course of their employment.
"5.
Petitioner shows that the defendants failed to take proper preparations for his treatment and failed to properly give him treatments and failed to properly give him after-care treatments."
House Concurrent Resolution No. 230 was adopted by the House of Representatives, and was concurred in by the Senate, of the Louisiana Legislature, in June, 1972. The part of that resolution which is pertinent here reads:
"BE IT RESOLVED by the House of Representatives of the Legislature of Louisiana, the Senate thereof concurring, that Cecil Pettis is hereby authorized to file suit against the state of Louisiana, through the State Department of Hospitals, and Central Louisiana State Hospital, and its agents and employees, upon his claim for damages alleged to have been sustained on or about May 28, 1971, by reason of an accident which occurred in the Parish of Rapides and alleged to have been caused by the negligence of the officers, agents and/or employees of the State Department of Hospitals and/or Central Louisiana State Hospital."
Defendant, State of Louisiana, through the State Department of Hospitals, filed a motion for summary judgment dismissing plaintiff's suit as to that defendant. The State alleged as grounds for that motion that "there has been no valid waiver of the sovereign immunity of the State of Louisiana from suits and from liability in this proceeding." After a hearing, the trial judge rendered a summary judgment dismissing plaintiff's suit as to that defendant. He cited as grounds for that ruling the case of Gremillion v. State, Department of Hospitals, 264 So.2d 784 (La.App. 1st Cir., 1972).
The Gremillion case involved substantially the same issue which is presented here. In that case Mrs. Gremillion died while she was a patient at the East Louisiana State Hospital. Her survivors instituted a suit for damages against the State of Louisiana, through the State Department of Hospitals, alleging that the decedent's death resulted *884 from the negligence of the defendant, through its agents, representatives and employees. At least eight different acts of negligence were particularized in the petition, all of which consisted of allegations that the defendant or its agents had failed to perform certain duties. The suit was instituted pursuant to a House Concurrent Resolution which authorized plaintiff to file suit:
".... against the State of Louisiana, through the State Department of Hospitals and East Louisiana State Hospital upon their claims for damages for the wrongful death of their wife and mother, Cecile Marie Gremillion, on or about August 22nd, 1965, by reason of an accident which occurred at or near East Louisiana State Hospital, Jackson, Louisiana, and alleged to have been caused by the negligence of the officers, agents, and/or employees of the East Louisiana State Hospital...."
The defendant filed an exception of no cause of action in that case and judgment was rendered by the trial court sustaining that exception. The First Circuit Court of Appeal affirmed that judgment, holding that the Concurrent Resolution adopted by both houses of the Legislature did not waive the immunity of the State to the type of suit which was instituted by plaintiff. The court reasoned that a reading of the resolution would lead anyone to believe "that the alleged damages were the result of active negligence, such as an automobile accident, rather than passive negligence such as malpractice." It held that the resolution did not waive the State's immunity in the Gremillion case, because the plaintiffs there alleged only passive negligence.
The resolution which authorized plaintiff to institute the instant suit contains substantially the same language as was used in the Gremillion resolution. It authorizes plaintiff to institute suit upon his claim for damages "by reason of an accident which occurred in the Parish of Rapides...." The allegations of negligence in the petition filed in this suit are not as particularized as were the allegations of negligence in Gremillion, but if we should apply here the standards which were applied in Gremillion, then we concede that we would have to hold that only passive negligence has been alleged in this action. We acknowledge, therefore, that the Gremillion case supports defendant's argument in this suit.
We, however, are unable to agree with the decision rendered by our brothers of the First Circuit in the Gremillion case. We find that the Supreme Court has not acted on applications for writs in that case, if any such applications were submitted, and the case has not been cited or followed in any other reported decision. We do not feel that the ruling in Gremillion should be applied in the instant suit, because we think the waiver of immunity granted here was intended to apply to this type suit, and that it is immaterial whether active or passive negligence has been alleged by plaintiff.
Defendant contends that the use of the term, "by reason of accident," in the concurrent resolution makes it apparent that the Legislature was misled into believing that plaintiff's alleged injuries resulted from active negligence, rather than passive negligence, on the part of the State or its agents or employees. It argues that "it is a fundamental concept of fairness to expect a prospective litigant to give full and fair notice to the Legislature when it requests a waiver," and that "to obtain a waiver for an `accident' and then to commence an action for malpractice is misleading." We do agree with that argument. There is nothing in the record to indicate that the Legislature was misled in any way in connection with the adoption of the House Concurrent Resolution No. 230. We know of no rule of law which requires a showing of active negligence in order to establish liability for damages resulting from an accident. It is conceivable that liability can be established in such a case by so-called passive negligence.
*885 We assume, in the absence of a showing to the contrary, that the Legislature knew what it was doing when both houses adopted House Concurrent Resolution No. 230. We cannot accept defendant's argument that the Legislature intended to waive the State's immunity only to a suit for damages based on an accident similar to an automobile accident, and that it did not intend to waive it for a suit such as the instant one. Neither do we believe that the Legislature intended to restrict its waiver of immunity to a suit where active negligence, as distinguished from passive negligence, was alleged.
LSA-R.S. 24:152 authorizes the Legislature to adopt an omnibus bill or concurrent resolution authorizing the filing of several suits against the State or its political subdivisions. Paragraph B of that section sets out four examples of the type provisions which should be included in such an omnibus bill or resolution, and in each such example the words "by reason of an accident" were used. The resolution in the instant suit was not an omnibus type resolution, of course, but we think the examples set out in that statute for omnibus bills and resolutions may also serve as examples of the provisions which should be included in individual concurrent resolutions. We do not believe that by the use of the word "accident" in all of the examples listed in LSA-R.S. 24:152, paragraph B, and in the House Concurrent Resolution which authorized this suit, the Legislature meant that the immunity of the State would be waived only if active negligence is alleged.
The power vested in the Legislature by the Constitution to waive the State's immunity from suit is not limited to any particular kind of rights or causes of action. Lewis v. State, 207 La. 194, 20 So.2d 917 (1945). Statutes or concurrent resolutions waiving the State's immunity, pursuant to Article 3, Section 35, of our State Constitution, are remedial in nature and should be liberally construed. Lewis v. State, supra; St. Julian v. State, 82 So.2d 85 (La.App. 1st Cir., 1955).
Our conclusion is that House Concurrent Resolution No. 230 of the 1972 Regular Session of the Louisiana Legislature authorizes plaintiff, Cecil Pettis, to institute the type suit which has been instituted here, that it effectively waives the immunity of the State of Louisiana, through the State Department of Hospitals, from suit or liability and that the effectiveness of the waiver is not impaired by the fact that plaintiff may have alleged only passive negligence on the part of said defendant or its agents or employees. The summary judgment rendered by the trial court dismissing plaintiff's suit as to the State, through the State Department of Hospitals, thus must be reversed.
Since we have concluded that the immunity of the State has been waived by the above-mentioned resolution, it is unnecessary for us to consider plaintiff's primary argument that the State of Louisiana, through the State Department of Hospitals, is not immune from suit in tort actions, even in the absence of such a waiver.
We turn now to the question of whether defendants, Dr. Seale, Dr. Kent and Dr. Kirkpatrick, are immune from suit in these proceedings.
These three defendants filed exceptions of no cause of action in which they alleged that they "were acting in their capacities as employees, officials, and/or agents of the State of Louisiana and of the Central Louisiana State Hospital in Pineville, Rapides Parish, Louisiana, and are therefore immune from suit by plaintiff herein." The trial judge rendered judgment sustaining the exceptions and dismissing the suit as to those defendants, citing the case of Snell v. Stein, 201 So.2d 876 (La.App. 4th Cir., 1967), as authority for that judgment.
In Snell v. Stein, supra, a suit for damages resulting from an automobile collision was instituted against the Parish of Jefferson and its Traffic Engineer, based generally on allegations that defendants had failed to provide and maintain adequate *886 traffic control signals. The trial court sustained exceptions of no cause of action filed by both defendants, and the Fourth Circuit Court of Appeal affirmed. The reviewing court held that the erection and maintenance of traffic lights is a governmental function, as distinguished from a proprietory function, and that under those circumstances, the "Parish of Jefferson or its officials" are immune from liability unless there was a waiver of that immunity. With reference to the action against the Traffic Engineer, the court held:
"It will be noted from the allegations of the pleadings quoted above that there is no basis upon which to hold Carl Bordelon, the Traffic Engineer of the Parish of Jefferson, liable in this matter. So far as he is concerned, as a government official, he must be shown to have acted without the scope of his authority or in bad faith in the performance of his duties. This is not set forth in plaintiff's pleadings. We are of the opinion that this defendant is likewise immune from personal liability to the plaintiff herein ..."
The Supreme Court refused plaintiff's application for writs in Snell, assigning the following reasons for doing so:
"Writ refused. Applicant has not cited any provision of the Constitution or Act of the Legislature which authorizes suits, ex delicto, or otherwise, to be brought against Jefferson Parish and/or its agents when acting in the performance of a governmental function. This ruling is not to be construed to apply to other actions brought against the Parish, which is amenable to suit in other action under the jurisprudence." Snell v. Stein, 251 La. 35, 202 So.2d 652 (1967).
We do not interpret the Snell case as holding that an agent or employee of the State is immune from suit, as is the State or one of its subdivisions or agencies. We think that this case holds that an agent or employee of the State is immune from liability for torts committed by him in the performance of his duties, provided that he was performing a governmental function at the time this tort was committed, and he was acting within the scope of his authority and in good faith at that time.
We cited the Snell case with approval in Beacon National Insurance Company v. Durand, 250 So.2d 207 (La.App. 3rd Cir., 1971), insofar as it held that parishes are immune from suits in tort, based on the alleged failure of the parish to perform the governmental function of maintaining traffic control devices. No issue was raised in Beacon, however, as to whether that immunity applied to agents or employees of the parish.
No one suggests in the instant suit that the operation of the Central Louisiana State Hospital or the treatment of plaintiff by the defendant doctors, constituted the performance of a governmental function. The ruling in the Snell case would apply, of course, only in the event the operation of the hospital or the above-mentioned treatment constituted the performance of such a function.
Although we are inclined to think that the operation of the hospital constitutes a proprietory rather than a governmental function of the State, we have decided that regardless of the nature of that function the judgment of the trial court sustaining the exceptions of no cause of action must be reversed.
In the first place, we know of no law or jurisprudence which grants immunity from suit to the defendant doctors, even if they were employees of the State or of the State-operated hospital. We agree that under certain circumstances, as pointed out in Snell, they may be relieved of personal liability for their tortious acts.
Secondly, the petition filed by plaintiff does not allege that the defendant doctors were agents or employees of the State or of the hospital. Allegations to that effect were included in the exceptions filed by the doctors, but the pleadings filed *887 by plaintiff contain no such assertions. In considering the exceptions of no causes of action filed by these defendants, we must consider the pleadings filed by plaintiff and assume that all of the well pleaded facts contained in his original and amended petitions are true. We cannot assume here that the defendant doctors were agents or employees of the State.
Third, even if we assume that defendants Seale, Kent and Kirkpatrick were agents of the State or of the hospital, and that the applicable law is correctly set out in the Snell case, the petition filed by plaintiff nevertheless sets out a cause of action against the doctors. In Snell, the court indicated that the government agent could be held liable if he is "shown to have acted without the scope of his authority or in bad faith in the performance of his duties." We concede that the petition filed by plaintiff in the instant suit contains only brief and general allegations. We express no opinion as to whether it is vulnerable to the pending exceptions of vagueness. In its present form, however, we think evidence would be admissible to show that the doctors acted without the scope of their authority or in bad faith, if any such evidence exists. The petition thus states a cause of action which would be consistent with the Snell ruling.
Our conclusion is that the trial court erred in sustaining the exceptions of no cause of action filed by defendants, Seale, Kent and Kirkpatrick. Having reached that conclusion, it is unnecessary for us to consider the additional argument of plaintiff that the immunity of those defendants has been waived.
For the reasons assigned, the judgment appealed from is reversed, and the case is remanded to the trial court for further proceedings consistent with the views herein expressed. One-half the costs of this appeal are assessed to defendants Seale, Kent and Kirkpatrick. The remaining costs of this appeal, or as much of said costs as legally may be levied against the State, are assessed to the State of Louisiana, through the State Department of Hospitals.
Reversed and remanded.
CULPEPPER, J., concurs and assigns written reasons.
CULPEPPER, Judge (concurring).
I concur in the result reached by the majority, but for different reasons. It is my view that in the recent case of Board of Commissioners of Port of New Orleans v. Splendour Shipping & Enterprises, Inc., La., 273 So.2d 19 (1973), our Supreme Court intended nothing less than the total abolition of the defense of sovereign immunity, when claimed by boards and agencies of the State. The court expressly stated "We hold that the Board of Commissioners of the Port of New Orleans, and other such boards and agencies, are not immune from suit for tort." (Emphasis supplied) Under that decision, I find it unnecessary to consider the legislative resolution authorizing this suit.
The Board of Commissioners' case was finally decided by our Supreme Court after the district judge in the present case rendered his decision. He therefore had no opportunity to consider the applicability of this latest expression of our Supreme Court on the issue of governmental immunity.
As regards the defendant physicians, who are sued individually for their negligent treatment of the plaintiff, I agree with the majority that the case of Snell v. Stein, 201 So.2d 876 (4th Cir. 1967), and the denial of writs therein by our Supreme Court, 251 La. 35, 202 So.2d 652, do not hold that an agent or employee of the State is immune from suit for tort. However, I cannot agree with the majority that the Snell case holds "an agent or employee of the State is immune from liability from torts committed by him in the performance of his duties, provided that he was performing *888 a governmental function at the time this tort was committed, and he was acting within the scope of his authority and in good faith at that time."
I do not believe our Supreme Court intended, in its denial of writs in the Snell case, to decree, without discussion, a blanket immunity to all State employees while they are (1) performing a governmental function, (2) acting within the scope of their authority and (3) acting in good faith. This statement of the rule is overly broad. It goes beyond the general rule in other jurisdictions and beyond our present jurisprudence.
For a general discussion of the problem see Prosser on Torts, 3d Ed., Section 126, and American Law Institute, Restatement of Torts, Section 10, on absolute privilege from tort suit, and Section 888, on mere immunity from civil liability. These authorities makes a distinction between a public officer, who is charged with the duty of making decisions, and lower administrative officials and employees. The rationale is that public officers would be unduly hampered and intimidated in the discharge of their discretionary duties, if absolute immunity from private liability were not extended. The classic examples of such public officials are judges and members of legislative bodies. Several Louisiana cases have recognized the immunity of public officers while exercising discretionary powers, Lecourt v. Gaster, 50 La.Ann. 521, 23 So. 463 (1898); Shirley v. Town of Winnfield, 41 So.2d 136, (La.App., 2d Cir. 1949), and O'Rourke v. O'Rourke, 69 So.2d 567 (La.Orl.App. 1953).
Administrative officers and employees are not generally granted absolute privilege or immunity from civil liability arising out of the performance of their duties. There are cases in our jurisprudence which recognize a distinction between the governmental function of public officers involving the use of discretion and the purely ministerial duties of other officials and employees, Tucker v. Edwards, 214 La. 560, 38 So.2d 241 (1949) and Hester v. Sanderson, 172 So. 565 (La.App., 2d Cir. 1937). Admittedly, the distinction between discretionary and ministerial duties is often hard to draw. There is probably no ministerial duty which does not require the use of discretion to at least some degree. Nevertheless, the distinction is made in our jurisprudence, and I think it is useful in certain cases. The rule quoted above from the majority opinion would make no distinction between public officers exercising purely discretionary duties and public servants whose duties are ministerial. There would be no difference between a member of a legislative body casting his vote and a public employee driving an automobile.
There are several cases in our jurisprudence which go beyond the rule of immunity of state employees set forth by the majority. For instance, in Taylor v. City of Baton Rouge, 233 So.2d 325 (La.App., 1st Cir. 1970), writ of certiorari refused, a police officer stopped plaintiff for a traffic violation and then used unreasonable and excessive force in subduing him. The court held the city liable, since the officer was acting within the scope and during the course of his employment. The officer was also found personally liable, although of course he was performing a governmental function, was acting within the scope of his authority and was in good faith. If the rule stated by the majority in the present case had been applied, there would have been no recovery against the officer individually. See also Bourque v. Lohr, 248 So.2d 901 (La.App., 3rd Cir. 1961); Musmeci v. American Automobile Insurance Company, 146 So.2d 496 (La.App., 4th Cir. 1962), and Franks v. City of Alexandria, 128 So.2d 310 (La.App., 3rd Cir. 1961) for similar holdings.
The rationale given by some authorities for immunity of public employees is that they were acting under orders of their governmental agency employer, which was immune from civil liability. It may be that since our state boards and agencies are *889 themselves no longer immune, their employees also should not be immune.
Furthermore, the present case is not a proper one for the difficult task of attempting to formulate a rule of immunity of government employees, which will be applicable in all factual situations. In my view, there can be little question that the defendant physicians were performing a proprietary, rather than a governmental function. For this reason alone, they are not immune from action for tort. I would prefer to reject the immunity defense on this basis, and not discuss other reasons which are not necessary to a determination of the present case.
For the reasons assigned, I concur.